**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| THADDEUS SANDERS and ARMANDO VILLESCA, Individually and For Others Similarly Situated,<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>XTO ENERGY, INC.,<br><br>    **Defendant.** | C.A. No. 21-cv-1725-RGA<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

### FIRST AMENDED COLLECTIVE ACTION COMPLAINT

1. Plaintiff Thaddeus Sanders (Sanders) and Plaintiff Armando Villesca (Villesca), (collectively, Plaintiffs) bring this action individually and on behalf of all current and former inspectors (Day Rate Inspectors or Putative Class Members) who worked for XTO Energy, Inc. (XTO) and were paid a day rate with no overtime compensation.

2. Sanders worked for XTO as an inspector.

3. Villesca worked for XTO as an inspector.

4. Plaintiffs and the Day Rate Inspectors (as defined below) regularly worked for XTO in excess of forty (40) hours each week.

5. But XTO did not pay them overtime.

6. Instead of paying overtime as required by the FLSA, XTO improperly paid Plaintiffs and the Day Rate Inspectors a daily rate with no overtime compensation.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

9. For at least the past three years, XTO has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

10. This Court has personal jurisdiction over XTO because XTO is incorporated in Delaware.

11. Pursuant to 28 U.S.C. § 1391, venue is proper in the District of Delaware because XTO is a resident entity of this judicial district and is subject to the court's personal jurisdiction with respect to the civil action in question.

## THE PARTIES

12. Plaintiff Sanders worked for XTO from approximately 2018 until 2019.

13. Sanders did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.

14. Sanders's consent to be a party plaintiff is attached as Exhibit A.

15. Plaintiff Villesca worked for XTO from approximately 2007 until 2016, and again from approximately May 2018 through February 2020.

16. Villesca did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.

17. Villesca's consent to be a party plaintiff is attached as Exhibit B.

18. Plaintiffs bring this action individually and on behalf of all similarly situated inspectors who were paid by XTO's day rate pay plan. XTO paid each of these workers a flat amount for each day worked.

19. The class of similarly situated employees sought to be certified as a collective action

2

under the FLSA is defined as:

> **All current and former inspectors who worked for or on behalf of XTO Energy, Inc. and who were paid according to its day rate pay plan in the past three (3) years (the "Putative Class Members" or "Day Rate Inspectors").**

20.    XTO is a corporation doing business throughout the United States. XTO has been served through service on its registered agent for service of process: **Corporation Service Company,** 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

## COVERAGE UNDER THE FLSA

21.    At all times hereinafter mentioned, XTO was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22.    At all times hereinafter mentioned, XTO was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23.    At all relevant times, XTO has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

24.    At all relevant times, XTO has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

25.    In each of the past 3 years, XTO's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

26.    At all relevant times, Plaintiffs and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

27.     XTO uniformly applied its policy of paying its inspectors, including Sanders and Villesca, a day rate with no overtime compensation.

28.     XTO applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

29.     By paying its inspectors a day rate with no overtime compensation, XTO violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

30.     As a result of this policy, XTO and the Putative Class Members do not receive overtime as required by the FLSA.

31.     XTO's uniform compensation scheme of paying its inspectors a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

### ADDITIONAL FACTS

32.     XTO is an international natural gas and oil producer operating throughout five divisions in the United States, Western Canada, and South America.[1]

33.     Those divisions include the Permian Division, Delaware Division, Mid-Continent Division, the Canada Division, and the Argentina Division.

34.     In order to make the goods and provide the services it markets to its customers, XTO employs inspectors like Sanders and Villesca and the Putative Class Members.

---

[1] http://www.xtoenergy.com/en-us/operations/operating-areas.

35.    XTO relies on Plaintiffs and Day Rate Inspectors to ensure the safe transportation of goods in interstate commerce.

36.    XTO's goods include oil and gas which travel through XTO's pipelines across state lines.

37.    Plaintiffs and the Putative Class Members were responsible for the safe transportation of XTO's goods through their job duties of inspecting elements of the pipeline infrastructure.

38.    Plaintiffs and the Putative Class Members traveled interstate to perform their duties of inspecting elements of the pipeline infrastructure.

39.    Plaintiffs and the Putative Class Members used tools, equipment, and consumables in their interstate work on oil and gas pipeline and related infrastructure.

40.    Plaintiffs and the Putative Class Members are involved in building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

41.    Plaintiffs and the Putative Class Members use their vehicles to perform essential aspects of their inspection related job duties.

42.    Plaintiffs and the Putative Class Members use their vehicles to carry tools, equipment, and consumables that are used on the oil and gas transportation network of pipelines and related infrastructure.

43.    Plaintiffs and the Putative Class Members work alongside other workers who are themselves engaged in building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

44.    XTO cannot operate its pipelines and allow its goods to travel within interstate commerce without the job duties performed by Plaintiffs and the Putative Class Members.

45.    Plaintiffs and the Putative Class Members are essential to XTO's operations.

46.     XTO's pipelines exist as conduits, much like roads or railways, to allow goods to enter and take part in interstate commerce.

47.     Plaintiffs and the Putative Class Members duties are vital to allowing oil and gas to travel from the oil and gas fields to refineries.

48.     XTO's entire industry is related to the exploration, production, and transportation of oil and gas goods.

49.     Plaintiffs and the Putative Class Members are regularly a part of interstate commerce.

50.     Plaintiffs and the Putative Class Members operate vehicles that are crossing state lines.

51.     Plaintiffs and the Putative Class Members operate vehicles with a gross vehicle weight rating of 10,000 lbs or less.

52.     Plaintiffs and the Putative Class Members contribute to and/or facilitates the movements of XTO's goods in interstate commerce.

53.     Plaintiffs' and the Putative Class Members' job duties directly relate to the safe transportation of XTO's goods.

54.     If Plaintiffs and the Putative Class Members do not perform their job duties correctly, XTO's pipelines and infrastructure could explode, causing serious personal and financial harm.

55.     XTO markets its infrastructure as a transmission and transportation network of pipelines.

56.     To complete their business objectives, XTO hired personnel, such as Sanders and Villesca, to perform inspection services.

57.     As a result, the Day Rate Inspectors are an integral part of XTO's business operations.

58.     As part of its oil and gas production operations, XTO employed numerous inspectors to participate in various operations at its natural gas plants, pipelines, and related facilities.

6

59.    XTO paid its inspectors a day rate only and no overtime—including Plaintiffs and the individuals that make up the putative class.

60.    While exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work in the oilfield.

61.    Plaintiff Villesca worked for XTO as an inspector in Texas from approximately 2018 through 2020.

62.    XTO paid Plaintiffs and the Putative Class Members a day rate for each day worked.

63.    That is, Plaintiffs and the Putative Class Members did not get paid if they did not work.

64.    Based on the schedules set by XTO, Plaintiffs and the Putative Class Members worked over forty (40) hours nearly every workweek they performed services for XTO.

65.    Although it is well-known that blue-collar oilfield workers like Plaintiffs and the Putative Class Members are not exempt from overtime, XTO did not pay Plaintiffs and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

66.    Plaintiffs and the Putative Class Members' primary job duties included enforcing XTO inspection standards, policies, and procedures at XTO's gas facilities and well sites.

67.    Upon information and belief, Plaintiffs and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans and standards created by XTO.

68.    Upon further information and belief, Plaintiffs' and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by XTO.

7

69.     Virtually every job function was pre-determined by XTO, including Plaintiffs and the Putative Class Members' schedule of work and related work duties. Plaintiffs and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

70.     Moreover, Plaintiffs' and the Putative Class Members' job functions were primarily routine in nature.

71.     Indeed, Plaintiffs and the Putative Class Members are blue-collar workers.

72.     They rely on their hands, physical skills, training, and energy to perform manual and routine labor in the oilfield.

73.     XTO determined the hours Plaintiffs and the Putative Class Members worked.

74.     XTO set Plaintiffs' and the Putative Class Members' pay and controlled the number of days and hours they worked.

75.     XTO set all employment-related policies applicable to Plaintiffs and the Putative Class Members.

76.     XTO maintained control over pricing and marketing. XTO also chose the equipment and product suppliers.

77.     XTO owned or controlled the equipment and supplies that Plaintiffs and the Putative Class Members used to perform their work.

78.     XTO had the power to hire and fire Plaintiffs and the Putative Class Members.

79.     XTO made all personnel and payroll decisions with respect to Plaintiffs and the Putative Class Members, including but not limited to, the decision to pay Plaintiffs and the Putative Class Members a day rate with no overtime pay.

80.     XTO provided tools and equipment that Plaintiffs and the Putative Class Members used.

81.    Plaintiffs and the Putative Class Members did not employ their own workers.

82.    Plaintiffs and the Putative Class Members worked continuously for XTO on a permanent full-time basis.

83.    XTO, instead of Plaintiffs and the Putative Class Members, made the large capital investments in leases, buildings, equipment, tools, and supplies.

84.    Plaintiffs and the Putative Class Members relied on XTO for their work.

85.    Plaintiffs and the Putative Class Members did not market any business or services of their own.

86.    Instead, Plaintiffs and the Putative Class Members worked the hours assigned by XTO, performed duties assigned by XTO, worked on projects assigned by XTO, and worked for the benefit of XTO and its customers.

87.    XTO paid Plaintiffs and the Putative Class Members on a weekly basis based on the number of days that they worked.

88.    Plaintiffs and the Putative Class Members did not earn a profit based on any business investment of their own.

89.    Rather, Plaintiffs' and the Putative Class Members' earning opportunity stemmed only from the number of days they were allowed to work, which was controlled by XTO.

90.    XTO improperly classified Plaintiffs and the Putative Class Members as independent contractors.

91.    The classification was improper because Plaintiffs and the Putative Class Members were not in business for themselves.

92.    Instead, they were economically dependent upon XTO for their work.

93. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

94. XTO denied Plaintiffs and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice.

95. Plaintiffs and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

96. XTO applied this pay practice despite clear and controlling law that states that Plaintiffs and the Putative Class Members were XTO's **_non-exempt_** employees, and not independent contractors.

97. Accordingly, XTO's pay policies and practices blatantly violated (and continue to violate) the FLSA.

98. To continue operating, XTO relies on inspectors.

99. While exact job titles and job duties may differ, these inspectors are subjected to the same or similar illegal pay practices for similar work.

100. Plaintiffs were not guaranteed a salary.

101. XTO cannot demonstrate that Plaintiffs were paid on a salary basis in accordance with the FLSA.

102. XTO cannot demonstrate that Plaintiffs were not its employee for purposes of the FLSA.

## CAUSES OF ACTION - COUNT ONE
### (Collective Action Alleging FLSA Violations)

### FLSA VIOLATIONS

103. All previous paragraphs are incorporated as though fully set forth herein.

104. Specifically, Plaintiffs and the Putative Class Members are (or were) non-exempt employees who worked for XTO and were engaged in oilfield services that were directly essential to

the production of goods for XTO and related oil and gas exploration and production companies. 29 U.S.C. § 203(j).

105. At all times hereinafter mentioned, Plaintiffs and the Putative Class Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

106. In violating the FLSA, XTO acted willfully, without a good faith basis, and with reckless disregard of applicable federal law.

107. The proposed collective of similarly situated employees, i.e., Putative Class Members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 19.

108. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of XTO.

109. XTO violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

110. Plaintiffs and the Putative Class Members have suffered damages and continue to suffer damages as a result of XTO's acts or omissions as described herein, and XTO is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

111. Moreover, XTO knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

112.   XTO knew or should have known its pay practices were in violation of the FLSA.

113.   XTO is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

114.   Plaintiffs and the Putative Class Members, on the other hand, are (and were) unsophisticated employees who trusted XTO to pay overtime in accordance with the law.

115.   The decision and practice by XTO to not pay overtime was neither reasonable nor in good faith.

116.   Accordingly, Plaintiffs and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

117.   All previous paragraphs are incorporated as though fully set forth herein.

118.   Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff.

119.   Other similarly situated employees have been victimized by XTO's patterns, practices, and policies, which are in willful violation of the FLSA.

120.   The Putative Class Members are defined in Paragraph 19.

121.   XTO's failure to pay any overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual Putative Class Members.

122.   Thus, Plaintiffs' experiences are typical of the experiences of the Putative Class Members.

123. The specific job titles or precise job requirements of the various Putative Class Members does not prevent collective treatment.

124. All of the Putative Class Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

125. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

126. Indeed, the Putative Class Members are blue-collar oilfield workers entitled to overtime after forty (40) hours in a week.

127. XTO has employed a substantial number of similarly situated inspectors across the United States since April 2017.

128. Upon information and belief, these workers are geographically dispersed, residing and working in locations across the United States.

129. Because these workers do not have fixed work locations, they may work in different states across the country in the course of a given year.

130. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and XTO will retain the proceeds of its rampant violations.

131. Moreover, individual litigation would be unduly burdensome to the judicial system.

132. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

133. Accordingly, the FLSA collective of similarly situated Plaintiffs should be certified as defined as in Paragraph 19 and notice should be promptly sent. At all times hereinafter mentioned, XTO has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

## RELIEF SOUGHT

108.    Plaintiffs respectfully pray for judgment against XTO as follows:

a.  For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, conditionally certifying a class and requiring XTO to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b.  For an Order approving the form and content of a notice to be sent to all potential Putative Class Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.  For an Order pursuant to Section 16(b) of the FLSA finding XTO liable for unpaid back wages due to Plaintiffs (and those Putative Class Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those Putative Class Members who have joined in the suit);

d.  For an Order awarding the costs and expenses of this action;

e.  For an Order awarding attorneys' fees;

f.  For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law.

Date: February 7, 2022                          Respectfully submitted,

Of Counsel:                                     FARNAN LLP

Michael A. Josephson                            /s/ Michael J. Farnan
Andrew W. Dunlap                                Sue L. Robinson (Bar No. 100658)
Carl A. Fitz                                    Brian E. Farnan (Bar No. 4089)
**JOSEPHSON DUNLAP LAW FIRM**                   Michael J. Farnan (Bar No. 5165)
11 Greenway Plaza, Suite 3050                   919 North Market St.
Houston, TX  77046                              12th Floor
Tel.: 713-352-1100                              Wilmington, DE 19801
Fax: 713-352-3300                               Telephone: 302-777-0300
mjosephson@mybackwages.com                      Facsimile: 302-777-0301
adunlap@mybackwages.com                         srobinson@farnanlaw.com
cfitz@mybackwages.com                           mfarnan@farnanlaw.com
                                                bfarnan@farnanlaw.com

Clif Alexander
**ANDERSON ALEXANDER PLLC**
819 N. Upper Broadway
Corpus Christi, Texas 78401

14

- 15 -

Telephone: 361-452-1279
Facsimile: 361-452-1284
clif@a2xlaw.com

Richard J. (Rex) Burch
**BRUCKNER BURCH, P.L.L.C**
11 Greenway Plaza, Suite 3025
Houston, TX  77046
Tel.: 713-877-8788
Fax: 713-844-8065
rburch@brucknerburch.com                    *Attorneys for Plaintiffs*